

FILED
FEB 0 1 2017
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RAYMOND J. ERICKSON,<br><br>Plaintiff,<br><br>vs.<br><br>THRIVENT INSURANCE AGENCY INC.,<br>d/b/a THRIVENT FINANCIAL FOR<br>LUTHERANS,<br><br>Defendant. | 4:16-CV-04044-RAL<br><br><br>OPINION AND ORDER GRANTING<br>MOTION TO STAY CASE<br>AND COMPEL ARBITRATION |

This case involves an insurance contract between Plaintiff Raymond Erickson and a fraternal benefit society. Insurance contracts issued by a fraternal benefit society generally include the society's bylaws, as well as any subsequent amendments to the bylaws, provided that the amendments do not reduce the benefits promised in the original contract. This Court must decide whether Erickson is bound by an arbitration clause that was not in his original insurance contract but was later added to the fraternal benefit society's bylaws. Because the arbitration clause does not reduce Erickson's benefits under the contract, this Court finds that the clause applies to him and requires him to arbitrate his claims.

I.    **Facts**

Erickson is a South Dakota resident. Doc. 1 at ¶ 1. In 1994, Erickson and his wife purchased a long-term care insurance policy from Lutheran Brotherhood, a Minnesota fraternal benefit society. Doc. 1 at ¶ 7; Doc. 16 at ¶ 3. Erickson's entire insurance contract consists of the

insurance certificate, including any riders or amendments; the application; and Lutheran Brotherhood's Articles of Incorporation and Bylaws. Doc. 19-1 at 11. Unlike a typical insurance policy that has fixed terms, some portions of Erickson's contract are subject to change. Specifically, Section 8.1 of the insurance certificate states that the contract includes the "Articles of Incorporation and Bylaws of the Society and all amendments made to them after the Date of Issue," provided that the amendments do not reduce the benefits promised in the contract. Doc. 19-1 at 11. The contract did not contain an arbitration provision when Lutheran Brotherhood issued it to Erickson.

In early 2002, Lutheran Brotherhood merged into a Wisconsin fraternal benefit society called Aid Association for Lutherans (AAL), with AAL continuing on as the surviving entity. Doc. 16 at ¶ 3. AAL changed its name to Thrivent following the merger but retained its Articles of Incorporation and Bylaws. Doc. 16 at ¶¶ 3, 6. These Bylaws include a Dispute Resolution Bylaw that AAL's board of directors adopted in 1999. Doc. 16 at ¶¶ 6, 7. Initially adopted as Section 12 of the bylaws, the Dispute Resolution Bylaw requires mediation and, if that fails, binding arbitration. Doc. 16 at ¶¶ 6, 7; Doc. 16-1 at 4–5; Doc. 16-2 at 6–7. The purpose of the Bylaw is to provide the "sole means" to resolve disputes between Thrivent and its members and insureds. Doc. 16-1 at 4–5; Doc. 16-2 at 6–7. It applies "to all claims, actions, disputes and grievances of any kind or nature whatsoever." Doc. 16-1 at 4; Doc. 16-2 at 6. AAL filed the Dispute Resolution Bylaw with the Wisconsin Office of the Commissioner of Insurance. Doc. 16 at ¶ 11. In December 2008, Thrivent amended its Bylaws by, among other things, renumbering the Dispute Resolution Bylaw as Section 11. Doc. 16 at ¶ 7; Doc. 16-1 at 4–5. Thrivent filed the December 2008 amendments with the Wisconsin Office of the Commissioner of Insurance and gave notice of the amendments to all state insurance departments, including the

South Dakota Division of Insurance. Doc. 16 at ¶¶ 9, 12; Docs. 16-3, 16-4. Thrivent notified its members of the amendments through the Winter 2009 edition of its official publication.[1]  Doc. 16 at ¶ 10.

Erickson made a claim for benefits under the contract in December 2014 after he moved into a long-term care facility. Doc. 1 at ¶ 13. Thrivent paid Erickson benefits for some time, but terminated them in November 2015. Doc. 1 at ¶¶ 16, 18. Erickson then sued Thrivent in this Court, asserting claims for breach of contract, bad faith, breach of fiduciary duty, punitive damages, and attorney's fees. Doc. 1. The parties mediated before Magistrate Judge Veronica Duffy, but were unable to resolve their dispute. Doc. 11. Thereafter, Thrivent filed a Motion to Compel Arbitration and argued that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–14, and the Dispute Resolution Bylaw require this Court to stay the case and compel arbitration. Docs. 14, 15, 21. Erickson opposed the motion, contending that the Dispute Resolution Bylaw is unenforceable for several reasons.

## II.   Analysis

Congress enacted the FAA to counter judicial aversion to arbitration and ensure that courts treat arbitration agreements just like any other contract. Volt Info. Scis., Inc. v. Bd. of

---

[1]The South Dakota and Minnesota statutes governing fraternal benefit societies both address how societies should notify members of amendments to the bylaws. See S.D. Codified Laws (SDCL) § 58-37A-11 (explaining that after the director of insurance has approved an amendment to a society's bylaws, the society shall "furnish[] [the amendment] to all members of the society either by mail or by publication in full in the official publication of the society"); Minn. Stat. § 64B.11 (same). In the introduction section of his brief, Erickson says "there is no evidence that [he] was notified of" the Dispute Resolution Bylaw. Doc. 18 at 1. However, Thrivent supplied that evidence in the form of an affidavit. Doc. 16 at ¶ 10. In the argument section of his brief, Erickson acknowledges Thrivent's affidavit verifying that it notified members of the December 2008 amendments via its official publication before stating: "However, [Erickson] did not agree to this change, nor was the change 'endorsed on or attached to' the contract, as required by the Policy." Doc. 18 at 7. Erickson no longer appears to contest, and submitted no countervailing affidavit, regarding the notice issue.

Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989). The key language of the FAA states that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides two mechanisms for enforcing an arbitration agreement: a stay of proceedings under § 3 when an issue in the case is "referable to arbitration" and an order compelling arbitration under § 4 when a party has refused to adhere to an arbitration agreement. 9 U.S.C. §§ 3, 4.

If a contract is subject to the FAA, courts ordinarily engage in a two-part inquiry to determine whether to stay the case and compel arbitration. See Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004); Daisy Mfg. Co. v. NCR Corp., 29 F.3d 389, 392 (8th Cir. 1994). First, the court determines whether a valid arbitration agreement exists between the parties. Faber, 367 F.3d at 1052. Second, the court must determine whether the dispute falls within the scope of the arbitration agreement. Id. These two issues, sometimes referred to together as the *"question of arbitrability,"* are for the court to decide "[u]nless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83–84 (2002) (alteration in original) (quoting AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986)). "'If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary' on the issue of arbitrability." Dakota Foundry, Inc. v. Tromley Indus. Holdings, 891 F. Supp. 2d 1088, 1095 (D.S.D. 2012) (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)). When the parties agreed to arbitrate and the particular dispute falls within the agreement, the FAA allows courts to stay the case and compel arbitration.

The FAA applies here because the contract, including the Dispute Resolution Bylaw, is in writing and because Erickson's purchase of insurance from an out-of-state company that does

business nationwide meets the FAA's interstate commerce requirement.   See Clayton v. Woodmen of The World Life Ins. Soc'y, 981 F. Supp. 1447, 1450 (M.D. Ala. 1997) ("[A]n insurance agreement between a fraternal benefit society and its member[s] . . . evidences a transaction in commerce."); In re 2000 Sugar Beet Crop Ins. Litig., 228 F. Supp. 2d 992, 995 (D. Minn. 2002) (stating that "insurance policies are contracts 'involving commerce'" and are therefore subject to the FAA); see also Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273–74 (1995) (adopting a broad reading of the phrase "involving commerce" in 9 U.S.C. § 2). The parties agree that this Court should decide the question of arbitrability and nothing in the contract clearly and unmistakably provides otherwise.   Thus, this Court turns to the first question, whether a valid arbitration agreement exists between Erickson and Thrivent.

### A. Validity of Arbitration Agreement

State contract law governs whether a valid arbitration agreement exists between Erickson and Thrivent.  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  This Court is sitting in diversity jurisdiction, so it applies South Dakota's choice-of-law rules to determine which state's laws govern whether a valid arbitration agreement exists. Dakota Foundry, 891 F. Supp. 2d at 1095.  The parties disagree on which state's law should apply, with Thrivent arguing for Wisconsin law and Erickson arguing for South Dakota law.

Thrivent argues that Wisconsin law governs because Thrivent is a fraternal benefit society domiciled in Wisconsin and organized under Wisconsin law.   Chapter 614 of Wisconsin's statutes generally requires that fraternal benefit societies have a lodge system, a representative form of government, and provide insurance and other benefits to their members. Wis. Stat. § 614.01.   Consistent with Wisconsin law, Thrivent is a nonprofit organization governed by a member-elected board of directors. Id. §§ 614.01, 614.42; Doc. 16 at ¶ 4. Each

Thrivent benefit member is entitled to one vote in the board of directors' election, and every member of the board of directors must also be a benefit member of Thrivent. Doc. 16 at ¶ 4; Doc. 16-1 at 2. Thrivent is organized under the lodge system, with nearly seven hundred local lodges across the United States. Doc. 16 at ¶ 5. Thrivent provides insurance and several other benefits to its members. Doc. 16 at ¶ 5.

As Thrivent notes, the Supreme Court of the United States has held that the Constitution's Full Faith and Credit Clause requires courts to apply the law of a fraternal benefit society's domicile when considering the validity of the society's bylaws. Order of United Commercial Travelers v. Wolfe, 331 U.S. 586, 624–25 (1947); Sovereign Camp, W.O.W. v. Bolin, 305 U.S. 66, 75 (1938); Modern Woodmen of Am. v. Mixer, 267 U.S. 544, 551 (1925). Several state courts have relied on Wolfe, Bolin, and Mixer to hold that the validity of a fraternal benefit society's arbitration bylaw must be determined under the law of the society's domicile. Russell v. Lutheran Bhd., No. 03 CV 6810, 2004 WL 316383, at *1–2 (Colo. Dist. Ct. Feb. 2, 2004) (holding that the Full Faith and Credit clause required the court to apply Wisconsin law in suit against Thrivent brought by a plaintiff who had purchased insurance from Lutheran Brotherhood); Crosby v. Aid Ass'n for Lutherans, No. MC 00-11088, 2004 WL 2584847, at *1 (Minn. Dist. Ct. Oct. 21, 2004) ("The United States Supreme Court's Full Faith and Credit Clause jurisprudence relating to fraternal benefit societies requires the court to apply Wisconsin law to this matter because AAL is incorporated pursuant to the laws of Wisconsin . . . ."); Lulloff v. Thrivent Fin. for Lutherans, No. 02-CV-3887, 2003 WL 22717879, at *3–4 (Wis. Cir. Ct. Oct. 29, 2003) (relying on Wolfe to conclude that Wisconsin law applies to suit against Thrivent brought by plaintiffs who had purchased insurance from Lutheran Brotherhood).

Erickson does not address the Supreme Court precedent and state cases suggesting that the Constitution's Full Faith and Credit Clause requires this Court to apply Wisconsin law to determine whether the Dispute Resolution Bylaw is valid. Instead, he argues that South Dakota law applies "as to contract interpretation." Doc. 18 at 4. He also asserts that there are "issues of fact regarding Thrivent's domicile and which state's law applies" because "[i]t appears . . . that Lutheran Brotherhood was domiciled in Minnesota." Doc. 18 at 4. However, at least two courts have applied Wisconsin law to lawsuits against Thrivent concerning contracts originally purchased from Lutheran Brotherhood. Russell, 2004 WL 316383, at *1–2; Lulloff, 2003 WL 22717879, at *3–4.

The issue of which state's law applies does not raise a material question of fact because the Dispute Resolution Bylaw constitutes a valid arbitration agreement under Minnesota, South Dakota, and Wisconsin law. Minnesota, South Dakota, and Wisconsin have all enacted statutes regulating fraternal benefit societies. Minn. Stat. §§ 64B.01–64B.48; SDCL §§ 58-37A-1 to 58-37A-39; Wis. Stat. §§ 614.01–614.96, 632.93. Under these laws, a fraternal benefit society insurance contract consists of the insurance certificate, the member's application, and the laws of the society. Minn. Stat. § 64B.19; SDCL § 58-37A-19; Wis. Stat. § 632.93. Critically, Minnesota, South Dakota, and Wisconsin statutes recognize that contracts between a fraternal benefit society and its members include later amendments to the society's laws, provided that the amendments do not destroy or diminish the benefits promised in the original contract. Minn. Stat. § 64B.19(2) ("Any changes, additions, or amendments to the laws of the society duly made or enacted subsequent to the issuance of the certificate, shall bind the owner and the beneficiaries, and shall govern and control the benefit contract in all respects the same as though the changes, additions, or amendments had been made prior to and were in force at the time of

the application for insurance, except that no change, addition, or amendment shall destroy or

diminish benefits that the society contracted to give the owner as of the date of issuance."); 

SDCL § 58-37-A-19 ("Any changes, additions or amendments to the laws of the society made or

enacted after the issuance of the certificate, bind the owner and the beneficiaries, and govern and

control the benefit contract in all respects the same as though the changes, additions, or

amendments had been made before and were in force at the time of the application for insurance.

However, no change, addition, or amendment may destroy or diminish benefits which the society

contracted to give the owner as of the date of issuance."); Wis. Stat. § 632.93(2) ("[A]ny changes

in the laws of a fraternal made subsequent to the issuance of a policy or certificate bind the

owner and any beneficiary under the policy or certificate as if they had been in force at the time

of the application, so long as they do not destroy or diminish benefits promised in the policy or

certificate.").   As required by Minnesota, South Dakota and Wisconsin law, Minn. Stat.

§ 64B.19; SDCL § 58-37-A-19; Wis. Stat. § 632.93, Erickson's contract states that the Articles

of Incorporation and Bylaws, including any later amendments, are part of the agreement:

> **8.1 ENTIRE CONTRACT.** The Entire Contract consists of:
>    1) This contract including any attached riders or amendments;
>    2) The Application attached to this contract; and
>    3) The Articles of Incorporation and Bylaws of the Society and all amendments made to them after the Date of Issue. Benefits will not be reduced by any future amendments to our Articles of Incorporation or Bylaws.
> Any rider, amendment or application which reduces, limits or excludes coverage is valid only if you agree with it in writing.

Doc. 19-1 at 11.

Several courts applying Wisconsin law have held that a fraternal benefit society member

is bound by an arbitration provision that was not in his original contract but was later added to

the society's bylaws. Hawkins v. Aid Ass'n for Lutherans, 338 F.3d 801, 809 (7th Cir. 2003);

Crosby, 2004 WL 2584847, at *1–3; Russell, 2004 WL 316383, at *2–3; Lulloff, 2003 WL 22717879, at *6. In Hawkins, for instance, the Seventh Circuit enforced a bylaw requiring arbitration even though the fraternal benefit society enacted the bylaw after it issued the plaintiffs' insurance contracts. 338 F.3d at 809. Given the unique nature of contracts between a fraternal benefit society and its members, the Seventh Circuit reasoned that the arbitration bylaw was not unconscionable or void for lack of assent:

> Because AAL is a fraternal benefit society, it is governed by different laws than private insurance companies. Accordingly, members who enter into insurance contracts with AAL are subject to its bylaws and any changes to those bylaws, provided such changes do not destroy or diminish the benefits promised. Appellants here agreed to be bound by these rules when they purchased insurance from AAL and therefore must accept the consequences of their agreements, including the requirement that they arbitrate their claims.

Id. A Wisconsin state court reached the same conclusion in Lulloff. Like Erickson and his wife, the plaintiffs in Lulloff purchased insurance from Lutheran Brotherhood before it merged with AAL and before AAL became Thrivent. 2003 WL 22717879, at *1. The court in Lulloff held that Thrivent's arbitration bylaw was part of the plaintiffs' contracts and did not diminish any of the benefits the plaintiffs were originally promised. Id. at *5–6.

Although the parties have not cited any cases applying Minnesota or South Dakota law to a situation like the one here, the Wisconsin cases discussed above are instructive. After all, the fraternal codes in Minnesota, South Dakota, and Wisconsin all recognize that contracts between a fraternal benefit society and its members include amendments to the society's bylaws, provided that the amendments do not destroy or diminish the promised benefits.

Erickson makes four arguments for why the Dispute Resolution Bylaw does not apply to him. First, he contends that the Dispute Resolution Bylaw "is contrary to" SDCL § 21-25A-3, a

9

South Dakota statute providing that arbitration provisions in "insurance policies" are void.[2] Although § 21-25A-3 applies to policies issued by a commercial insurance company, it does not apply to Erickson's contract. The chapter of the South Dakota Code concerning fraternal benefit societies makes clear that the societies are governed by different laws than commercial insurance companies: "Except as provided in this chapter, societies are exempt from all other provisions of the insurance laws of this state unless they are expressly designated in the law, or unless it is specifically made applicable by this chapter." SDCL § 58-37A-23. Because § 21-25A-3 regulates the relationship between insureds and insurers and only applies to entities in the insurance industry, it qualifies as an "insurance law" under § 58-37A-23, despite the fact that it is not located in South Dakota's Insurance Code. See Cox v. Woodmen of the World Ins. Co., 556 S.E.2d 397, 402 (S.C. Ct. App. 2001) (holding that statute in South Carolina's Arbitration Act that precluded arbitration provisions in insurance contracts constituted a "general insurance law" under South Carolina statute exempting fraternal benefit societies from such laws). Nothing in the South Dakota Code specifically makes § 21-25A-3 applicable to fraternal benefit societies. Section 58-37A-39 lists multiple chapters from the South Dakota Code that apply to fraternal benefit societies "to the extent applicable and not in conflict with the express provisions of this chapter and the reasonable implications of this chapter." Chapter 21 is not one of the chapters

_____

[2]Section 21-25A-3 provides in full: "This chapter [meaning South Dakota's chapter on the enforcement of arbitration agreements] does not apply to insurance policies and every provision in any such policy requiring arbitration or restricting a party thereto or beneficiary thereof from enforcing any right under it by usual legal proceedings in ordinary tribunals or limiting the time to do so is void and unenforceable. However, nothing in this chapter may be deemed to impair the enforcement of or invalidate a contractual provision for arbitration entered into between insurance companies." SDCL § 21-25A-3.

listed as applying to fraternal benefit societies. Accordingly, § 58-37A-23 exempts Thrivent from § 21-25A-3.[3]

Erickson next argues that the Dispute Resolution Bylaw is unenforceable because he never bargained for nor agreed to it. This argument overlooks that Erickson's original contract contained a provision by which he was bound by later amendments to the Bylaws, so long as the amendments did not destroy or diminish the promised benefits. Doc. 19-1 at 11; see also Minn. Stat. § 64B.19; SDCL § 58-37A-19; Wis. Stat. § 632.93. Because Erickson had already agreed to be bound by amendments to the Bylaws, Thrivent's later addition of the Dispute Resolution Bylaw was "not an independent contract requiring mutual assent." Hawkins, 338 F.3d at 808. Nor was AAL or Thrivent required to negotiate individually with Erickson before enacting the Dispute Resolution Bylaw; as a member of a fraternal benefit society, Erickson delegated control over the society's decisions to his elected representatives. Wolfe, 331 U.S. at 606 ("As long as he remains a member [of the fraternal benefit society], the terms of his membership, including obligations and benefits relating to the insurance funds of the society, are subject to change without his individual consent. The control over those terms is vested by him and his fellow members in the elected representative government of their society as authorized and regulated by the law of [the State.]"); Hawkins, 338 F.3d at 806 (holding that because "members of fraternal benefit societies expressly delegate decision-making power to their elected representatives," an arbitration bylaw was not invalid simply because the society failed to negotiate the bylaw with its members).

---

[3]It is for the South Dakota Legislature rather than this Court to decide whether fraternal benefit societies continue to deserve special treatment and exemption from certain insurance laws under the code or whether such fraternal benefit societies have become largely indistinguishable from for-profit insurance companies.

Erickson also argues that the Dispute Resolution Bylaw is unenforceable because it was a "change" to the contract that was not "endorsed on or attached to" the contract as required by Section 8.2. This argument is unconvincing. Section 8.2 of the insurance certificate provides:

> **8.2 CHANGE OF CONTRACT.** No change in this contract is valid unless it is made in writing and signed by our President and Secretary. All changes must be endorsed on or attached to this contract unless waived by us. No agent may change this contract or waive any of its provisions.

Doc. 19-1 at 11. The insurance certificate defines the word "us" as used in Section 8.2 as "Lutheran Brotherhood," which is now Thrivent. Doc. 19-1 at 6. Thus, under Section 8.2, Thrivent can waive the requirement that changes to the contract be endorsed or attached. Thrivent's ability to waive this requirement, as well as the other language in Section 8.2 saying that Thrivent's secretary and president must approve any changes and that agents cannot change the contract, strongly suggests that Section 8.2 seeks to forbid changes third parties might seek to make to the contract, rather than amendments Thrivent itself makes to the Bylaws. This interpretation is consistent with Thrivent's Articles of Incorporation and Bylaws, which specifically address when amendments take effect and how Thrivent notifies members of amendments. Under Section 26 of the Bylaws, Thrivent must notify its members of amendments to the Bylaws via Thrivent's official publication. Doc. 16-1 at 8, Bylaw § 26 ("All amendments to the . . . Bylaws of the Society shall be published in the official publication not later than four months after the date of filing such amendments with the Commissioner of Insurance of the State of Wisconsin."); see also Doc. 16-1 at 3, Article of Incorporation VIII ("Notice of changes to the bylaws shall be given to benefit members . . . in a manner prescribed in the bylaws."). Section 34 of the Bylaws provides that "[a]ny changes to these bylaws shall be effective from the date of passage or at such other date as stipulated by the board and shall be filed promptly after adoption

with the Commissioner of Insurance of the state of Wisconsin. After filing, the changes shall be published in the official publication as prescribed in these bylaws." Doc. 16-1 at 9, Bylaw § 34. Thrivent's Articles of Incorporation and Bylaws do not require that an amendment to the Bylaws be "endorsed on or attached to" every members' contracts in order to notify members of the amendment or make the amendment effective. It is unreasonable to interpret Section 8.2 as requiring that amendments to the Bylaws be "endorsed on or attached to" members' contracts when the text of Section 8.2 strongly suggests that it does not apply to amendments to the Bylaws and the portions of the contract specifically addressing amendments to the Bylaws do not impose such a requirement.

Erickson's final argument is that the Dispute Resolution Bylaw is unenforceable under the contract and the statutes governing fraternal benefit societies because the right to litigate in court constitutes a benefit under the contract and the Bylaw reduces, diminishes, and destroys this benefit. See Doc. 19-1 at 11 ("Benefits will not be reduced by any future amendments to our Articles of Incorporation or Bylaws. Any rider, amendment or application which reduces, limits or excludes coverage is valid only if you agree with it in writing."); Minn. Stat. § 64B.19; SDCL § 58-37A-19; Wis. Stat. § 632.93(2). "At the least," Erickson contends, the term "benefits" is ambiguous under the contract and his interpretation must therefore govern. This Court disagrees.

Although the contract does not specifically define the term "benefits," it makes clear that "benefits" means monetary benefits Thrivent will pay to its insureds if coverage exists. The insurance certificate begins by stating "[w]e will pay benefits subject to all of the terms and conditions of this contract." Doc. 19-1 at 2. Next, Section 2 of the certificate explains how an insured qualifies for benefits. Doc. 19-1 at 7, § 2 of Contract. The certificate then describes the two types of benefits available under the contract: the "Nursing Home Benefit" as defined in

13

Section 3 and the "Waiver of Premium Benefit" as defined in Section 4. Doc. 19-1 at 8, § 3 of Contract ("We will pay you the Nursing Home Benefit shown on page 3 for each day that you meet the Conditions on Eligibility for Benefits as specified in Section 2.1."); Doc. 19-1 at 8, § 4 of Contract (explaining when premiums will be refunded or waived). Finally, the contract's "Spouse Long-Term Care Benefit" rider under which Erickson is seeking coverage lists the benefits he is entitled to: "**BENEFITS PROVIDED.** Sections 2, 3 and 4 of this contract will apply to the Spouse." Doc. 19-1 at 12. The certificate's description of the long-term health care benefits it provides, as well as its repeated references to *paying* benefits, belies Erickson's argument that the term "benefits" is ambiguous.

Furthermore, nothing in the contract suggests that the right to litigate in court constitutes a "benefit." Although Erickson argues that Section 6.7 of the certificate "expressly provide[s]" for legal action, Section 6.7 merely establishes when "legal actions" can be brought:

> **6.7   LEGAL ACTIONS.** No legal action may be brought to recover on this contract:
>     1) Until at least 60 days after written proof of loss is given as in Section 6.3; or
>     2) After three years from the date written proof of loss must be given.

Doc. 19-1 at 9, § 6.7 of Contract. Arguments that provisions like Section 6.7 trump arbitration bylaws because the provisions reserve the right to litigate in court have proved unsuccessful. Hawkins, 338 F.3d at 806 (explaining that a contractual provision similar to Section 6.7 "did not reserve the right to a judicial forum, it merely established a default limitations period for bringing suit"); Aid Ass'n for Lutherans v. Radmer, No. 99-C-1205, 2001 WL 34388864, at *1 n.4, *6 (E.D. Wis. Oct. 31, 2001) (setting forth the contractual provision considered in Hawkins and concluding that the provision did not reserve the right to a judicial remedy), aff'd sub nom. Hawkins, 338 F.3d 801 (7th Cir. 2003). Courts have likewise rejected arguments that arbitration

provisions in bylaws diminish or destroy benefits provided under fraternal benefit society contracts. Hawkins, 338 F.3d at 806 (noting that there was "no authority supporting the position that losing access to court destroys or diminishes the insurance benefits promised in the policy"); Radmer, 2001 WL 34388864, at *6 ("The right to seek redress in court is not a 'benefit' of the contract that AAL provides to its members . . . ."); Lulloff, 2003 WL 22717879, at *6 (holding that Thrivent's arbitration bylaw did not reduce the plaintiffs' benefits under their policies).

By entering into a contract with a fraternal benefit society, Erickson agreed to be bound by later amendments to the society's bylaws so long as those amendments did not reduce his benefits. Because the Dispute Resolution Bylaw does not reduce the long-term healthcare benefits Erickson contracted for, the Bylaw applies to Erickson and constitutes a valid arbitration agreement between him and Thrivent.

## B. Scope of Arbitration Agreement

Erickson argues that he cannot be forced to arbitrate his tort claims because they do not fall within the scope of the Dispute Resolution Bylaw. While state law governs whether a valid arbitration agreement exists, federal substantive law governs whether a claim falls within the scope of an arbitration clause. Donaldson Co. v. Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009). Under federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "construction of the contract language itself." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). The Dispute Resolution Bylaw in this case is expansive. It covers "all claims, actions, disputes and grievances of any kind or nature whatsoever. It includes, but is not limited to, claims based on breach of benefit contract, as well as claims based on fraud, misrepresentation, violation of statute . . . and infliction of distress . . . ." Doc. 16-1 at 4. The Eighth Circuit has concluded that

broadly worded arbitration provisions like the one here cover tort claims relating to the parties' contractual relationship.  See PRM Energy Sys., Inc. v. Primenergy, LLC, 592 F.3d 830, 837 (8th Cir. 2010) ("Arbitration may be compelled under 'a broad arbitration clause . . . as long as the underlying factual allegations simply "touch maters covered by" the arbitration provision.'" (quoting 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008))); Hudson v. ConAgra Poultry Co., 484 F.3d 496, 499–500 (8th Cir. 2007) ("[W]e generally construe broad language in a contractual arbitration provision to include tort claims arising from the contractual relationship, and we compel arbitration of such claims.").  Erickson's bad faith and breach of fiduciary duty claims relate to the contract because they are based on Thrivent's alleged failure to properly pay the benefits promised in the agreement.  Thus, Erickson's tort claims fall within the scope of the Dispute Resolution Bylaw along with his other claims.

## III.   Conclusion

For the reasons stated above, it is hereby

ORDERED that Thrivent's Motion to Compel Arbitration and Stay Proceedings, Doc. 14, is granted.  It is further

ORDERED that this case is stayed and the parties must proceed to arbitration in accordance with the terms of the contract.

DATED this 1st day of February, 2017.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE